UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| LISA FICALORE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION  3:13-cv-61-TCB |
| | ) | FILE NO. _____ |
| v. | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| PEACHTREE CITY, GEORGIA, | ) | |
| H.C. CLARK II, in his individual | ) | |
| capacity, JIM PENNINGTON, in his | ) | |
| individual capacity, DON HADDIX, | ) | |
| in his individual capacity, ERIC | ) | |
| IMKER, in his individual capacity, | ) | |
| GEORGE DIENHART, in his | ) | |
| individual capacity, KIM | ) | |
| LEARNARD, in her individual | ) | |
| capacity, VANESSA FLEISCH, | ) | |
| in her individual capacity, and | ) | |
| LINDA MORTON, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Lisa Ficalore ("Ms. Ficalore" or "Plaintiff") respectfully submits

the following Complaint against Defendants Peachtree City, Georgia, ("Peachtree

City"), Police Chief H.C. "Skip" Clark II ("Clark"), in his individual capacity, City

Manager Jim Pennington, ("Pennington"), in his individual capacity, Mayor Don

Haddix ("Haddix"), in his individual capacity, Council Member Eric Imker

("Imker"), in his individual capacity, Council Member George Dienhart ("Dienhart"), in his individual capacity, Council Member Kim Learnard ("Learnard"), in her individual capacity, and Council Member Vanessa Fleisch ("Fleisch"), in her individual capacity, and Linda Morton ("Morton"), City of Peachtree City Municipal Court Clerk of Court, in her individual capacity.

## Introduction

1.     This is an action for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*., and the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. § 2615 *et seq.,* to correct unlawful employment practices on the basis of gender and disability, retaliation, and intentional infliction of emotional distress, to vindicate Ms. Ficalore's rights, and to make her whole. It is also an action for damages and injunctive relief arising out of Clark's obstruction of justice and conspiracy to violate the civil rights of Ms. Ficalore.   Ms. Ficalore seeks declaratory and injunctive relief, damages, and attorneys' fees and costs.

## Jurisdiction and Venue

2.     Ms. Ficalore's claims present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3.     This Court is an appropriate venue for all of Ms. Ficalore's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3),  because all of the parties reside within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Ms. Ficalore's claims occurred in this judicial district.

## The Parties

4.     Plaintiff Lisa Ficalore is a citizen of the State of Georgia and a resident of Meriwether County, Georgia.  She submits herself to the jurisdiction of this Court.

5.     Ms. Ficalore is and, at all times relevant, was an individual with a disability as that term is defined under 42 U.S.C. § 12101(1).

6.     Ms. Ficalore is a person with a disability because she has physical impairments causing substantial limitations in one or more major life activities, because she has a record of disability, and because Peachtree City regards her as having a disability.

7.     Defendant Peachtree City is a municipal corporation subject to actions of this kind.

8.     Defendant Peachtree City is an "employer" within the meaning of the ADAAA, 42 U.S.C. § 12101 *et seq.*

9.     Defendant Peachtree City is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADAAA and has employed more than 15 persons for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10.     Defendant Peachtree City may be served with process via personal service upon its Human Resources Director, Ellece Brown.

11.     Defendant H.C. "Skip" Clark II ("Clark") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and summons to him at the Peachtree City Police Department, 350 South Highway 74, Peachtree City, Georgia 30269.

12.     Defendant Clark, as Police Chief, is the highest official in the Peachtree City Police Department.

13.     Defendant Jim Pennington ("Pennington") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to him at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

14.    Defendant Pennington, as City Manager, is the highest official in city government.

15.    Defendant Don Haddix ("Haddix") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to him at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

16.    Defendant Eric Imker ("Imker") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to him at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

17.    Defendant George Dienhart ("Dienhart") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to him at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

18.    Defendant Kim Learnard ("Learnard") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to her at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

19.     Defendant Vanessa Fleisch ("Fleisch") is a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to her at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

20.     Defendant Linda Morton ("Morton") is the City of Peachtree City Municipal Court Clerk of Court, a resident of Georgia, is subject to this Court's jurisdiction, and may be served with process by delivering a copy of the Complaint and Summons to her at Peachtree City's City Hall, 151 Willow Bend Road, Peachtree City, Georgia 30269.

### Administrative Proceedings

21.     Ms. Ficalore filed Charges of Discrimination with the Equal Employment Opportunity Commission on February 18, 2011, an Amended Charge of Discrimination on April 1, 2011, a Second Amended Charge of Discrimination on April 5, 2012, a second Charge of Discrimination on May 18, 2012, a third Charge of Discrimination (under a new EEOC Charge number at the EEOC's direction) on August 6, 2012, and an Amended Charge of Discrimination on August 14, 2012.

### The Facts

22.    Ms. Ficalore began her employment with the Peachtree City Police Department as the Police Chief's staff assistant on September 9, 2002.

23.    Ms. Ficalore became the former Police Chief James Murray's Administrative Assistant on October 6, 2003.

24.    Ms. Ficalore has physical impairments that substantially limit one or more major life activities

25.    Ms. Ficalore has a record of disability and she has repeatedly notified Defendants of her disabilities and provided them with medical and other documentation of her disabilities and her need to periodically take time off from work because of her disabilities.

26.    Defendants regard Ms. Ficalore as disabled.

27.    Ms. Ficalore's disability is related to her gender.

28.    Ms. Ficalore is able to perform the essential functions of her job with or without accommodation.

**Ms. Ficalore's Job Under the Previous Police Chief, Chief Murray**

29.    Over the first six years of her employment with Defendant Peachtree City Police Department, Ms. Ficalore received exemplary performance reviews and Police Chief Murry repeatedly affirmed that she was an outstanding employee.

30.     For example, in her first year evaluation (2003), Ms. Ficalore received a 4 out of 4 - Outstanding evaluation.

31.     In this evaluation, it was noted that Ms. Ficalore (previously Ms. Dyer) "demonstrated a tremendous ability in performing," "performed extremely well," was a "valuable asset," and caused the Defendants to receive "numerous compliments about the professional way they were treated" by Ms. Ficalore, among other compliments and accolades. Ms. Ficalore received a merit salary increase.

32.     In October, 2003, Ms. Ficalore was promoted to Administrative Assistant with a salary increase.

33.     In her second year evaluation (2004), Ms. Ficalore received a 4 out of 4 - Outstanding evaluation.

34.     In this evaluation, it was noted that Ms. Ficalore was a "broad-based employee," "very flexible," and had a "very professional attitude," and a "solid foundation concerning departmental policies and procedures, among other compliments and a merit salary increase.

35.     Likewise, in her third (2005), fourth (2006), and fifth (2007) year evaluations, Ms. Ficalore received the maximum score, an Outstanding, and similarly complimentary and positive comments.

**Ms. Ficalore's Job After Defendant Clark is Hired**

36.     At the end of 2007, Ms. Ficalore's supervisor, former Police Chief Murray, left his position.

37.     Defendant H.C. "Skip" Clark II ("Clark") was hired into the Chief of Police position in April 2008 and began in August 2008.

38.     From the outset, Clark treated Ms. Ficalore differently and less favorably than her non-disabled and male peers.

39.     Since Clark became the Police Chief, he has regularly subjected Ms. Ficalore to ongoing harassment and retaliation because of her disability and gender.

40.     On October 6, 2008, Ms. Ficalore received her sixth performance evaluation.  It was her lowest job evaluation ever, a four out of five, which was her first evaluation after Defendant Clark became the Chief of Police.

41.     During the October 16, 2008 City Council Meeting, Defendant Clark proposed to the City Council that it reclassify Ms. Ficalore's position, reducing her job title back down to staff assistant, and cutting her pay grade and class level.

42.     This proposal was granted and became effective October 17, just over two months after Defendant Clark became the Police Chief.

43.    Additionally, Ms. Ficalore was not allowed to work comp time in her position at the Police Department at the direction of Defendant Clark, while other city employees at all levels are allowed to work comp time.

44.    In January 2009, Defendants moved Ms. Ficalore from her usual location and put her into a front desk position in the Police Department.

45.    Shortly thereafter, in or about January 2009, Ms. Ficalore complained to Claudia Stapleton, her immediate supervisor, Captain Stan Pye, and Major Dupree, then second in command, that she felt that Defendant Clark was targeting her and singling her out on the basis of her gender and disability.

46.    Also around this time, Ms. Ficalore discovered that the Office Administrator was keeping notes on the shared drive about her, which all employees were able to access.  There were not notes about other non-disabled and male employees on the shared drive.

47.    On October 17, 2009, Ms. Ficalore received her seventh performance evaluation.  It was lower still:  3 out of 5 - Fully Satisfactory.

48.    The constructive comments on her evaluation, however, were not substantially different from the two prior years.

49.    Ms. Ficalore again complained to her supervisors that she believed that Defendant Clark was singling her out because of her gender and disability.

50.     In 2010, Ms. Ficalore's medical issues worsened, and she began to need medical leaves of absence to treat her medical condition.

51.     Ms. Ficalore has had five surgeries over the last nine years as a result of her medical condition.

52.     In January 2010, Ms. Ficalore discovered that Clark had asked Ms. Ficalore's supervisor to "keep track of" Ms. Ficalore.

53.     In April 2010, Ms. Ficalore was denied training that was offered to other employees.

54.     In August 2010, Clark required Ms. Ficalore to provide to him notes concerning her private and personal medical condition and her prognosis, which is specific to females.  Defendant Clark did not request the same invasive details from male or non-disabled employees when they needed to take medical leave.

55.     Defendant Clark also demanded a letter from Ms. Ficalore's doctor, which she provided to Defendant Clark on August 11, 2010.

56.     On August 27, 2010, Ms. Ficalore was written up for the first time throughout the entire course of her employment, for being two minutes late to her desk.

57.     On or about September 14, 2010, Ms. Ficalore turned in her first Family Medical Leave Act request for intermittent leave as necessary due to her medical condition.

58.     In September 2010, a Human Resources representative told Ms. Ficalore that Defendant Clark was instructing Ms. Ficalore's supervisor to strictly document Ms. Ficalore's sick time.   Defendant Clark asked Ms. Ficalore's supervisors to ask the HR Director what they could "do to [her]" because of her use of sick leave.

59.     Because of this, and other above-referenced actions, Ms. Ficalore again complained to both her supervisors and HR Director Ellece Brown that she was being retaliated against and singled out because of her gender and disability.

60.     On or about October 1, 2010, Ms. Ficalore turned in her second Family Medical Leave Act request for ongoing leave for two to twelve days at a time due to her medical condition.

61.     On or about October 17, 2010, Ms. Ficalore received a draft of her eighth performance evaluation from her supervisor, Claudia Stapleton. This draft indicated that Ms. Stapleton had given Ms. Ficalore an "Exceeds Standards" rating.

62.     In November 2010, Ms. Ficalore filed another FMLA leave request to cover a scheduled January 2011 surgery required for her medical conditions.  Ms.

Ficalore had delayed this surgery because of her fear of retaliation and discrimination at work and the resulting stress, which in turn aggravated her medical conditions.

63.     Between October 2010 and December 2010, Defendant Clark revised Ms. Stapleton's draft of Ms. Ficalore's eighth performance evaluation two times, before giving Ms. Ficalore the final version of her evaluation - - two months late.

64.     In the final version of her eighth evaluation, which Ms. Ficalore received in late December 2010, Ms. Ficalore again received a Fully Satisfactory, 3 out of 5 rating, despite the fact that her direct supervisor rated her at Exceeds Standards, or 4 out of 5.  Defendant Clark lowered Ms. Ficalore's marks down to the Fully Satisfactory rating due to her absences and leaves.

65.     When she received her final evaluation, Claudia Stapleton told Ms. Ficalore that the delay was due to Defendant Clark editing Stapleton's evaluation of Ms. Ficalore from high 4 to low 3.

66.     Stapleton told Ms. Ficalore that, as Ms. Ficalore's immediate supervisor, she did not agree with Defendant Clark's adjusting the scores down and that Ms. Ficalore was excelling at her job.

67.     On January 5, 2011, Ms. Ficalore was informed that she was to train Sergeant Leland Crider ("Crider"), a male, to replace her during her January 2011

medical leave, and that she would be temporarily assigned to a full time front desk position in City Hall.

68.    Ms. Ficalore was to be assigned to the position of City Hall Customer Service Representative II, yet another demotion down from the Staff Assistant position.

69.    Ms. Ficalore was demoted despite the fact that her work load was steadily increasing, and her immediate supervisor believed she should have received a higher performance evaluation because of her excellent work performance.

70.    At this time, Ms. Ficalore again complained to her supervisors of the repeated and ongoing discrimination and retaliation by Defendants.

71.    Ms. Ficalore returned to work after her January 2011 surgery but was not placed back in her position in the Police Department, and was instead forced to remain in City Hall and maintain her demoted position.

72.    On February 18, 2011, Ms. Ficalore filed her first Charge of Discrimination with the EEOC.

73.    Ms. Ficalore has since suffered continuing retaliation, as detailed below, as a result of her filing an EEOC Charge complaining of discrimination and

complaining internally of being subjected to different treatment than her male and non-disabled peers to her supervisors and the Director of HR.

74.    Ms. Ficalore filed an Amended Charge of Discrimination on April 1, 2011, alleging continuing retaliation for her internal complaints of discrimination and additional facts detailing retaliation as a result of her filing her first Charge of Discrimination.

75.    For instance, despite the fact that Crider no longer works in Ms. Ficalore's position at the Police Department, instead of reinstating Ms. Ficalore to her position, the Defendants filled her position with two male individuals, both on light duty, who worked full time at the same time in the position she used to fill by herself.

76.    Ms. Ficalore filed a Second Amended Charge of Discrimination on April 4, 2012 (amended again on April 5, 2012) detailing the continuing discrimination and retaliation she has suffered at the hands of the Peachtree City Defendants Clark and Pennington.

77.    Shortly after filing her Second Amended Charge of Discrimination, Ms. Ficalore was denied leave she requested under the Family Medical Leave Act ("FMLA").

78.    Ms. Ficalore has repeatedly applied for positions in Peachtree City for which she is qualified, including the positions of Deputy Court Clerk, Recreation Services Specialist, and Administrative Assistant in HR.

79.    Ms. Ficalore has been rejected for all of these positions, which have been filled by less qualified individuals, and in violation of Defendants' seniority policies, and has been given pretextual reasons for her rejection.

80.    Additionally, the acting City Manager, Nikki Vrana, admitted to Ms. Ficalore that management had decided not to transfer her out of her position at City Hall as long as her EEOC Charges are pending.

81.    Ms. Ficalore has complained about not being hired for any of these full time positions because of her gender, disability, and in retaliation for complaining and filing Charges of Discrimination.

82.    Ms. Ficalore has not been allowed to work comp time, while other city employees at all levels are allowed to work comp time.

83.    Ms. Ficalore has been denied the ability to take her accrued vacation time, and has been written up for taking small increments of time off without pay.

84.    Additionally, in or about April or May 2012, Defendants took away Ms. Ficalore's duties and projects on which she had been working, including the floating/new records system control and control over her other ongoing projects.

85.    Also shortly after filing her Second Amended EEOC Charge, Ms. Ficalore learned that her supervisor again started keeping notes regarding Ms. Ficalore's private medical information, and notes regarding Ms. Ficalore's comings and goings, on her computer.

86.    Police Chief Clark has intimidated witnesses, telling the previous second in Command Major Dupree that during the EEOC investigation, if he did not "get [Defendant Clark's] back," things would be "bad."

87.    During the EEOC investigation, Defendant Clark intimidated another witness, Captain Stan Pye, telling him that it is "easy to get rid of people."

88.    On May 3, 2012, just a month after Ms. Ficalore filed her April 2012 EEOC Charges, City Council members Haddix, Imker, Dienhart, Learnard, and Fleisch, at the request of Defendant Pennington, "eliminated" Ms. Ficalore's position effective June 1, 2012.

89.    In response, Ms. Ficalore applied for the position of Deputy Court Clerk with the Municipal Court, a full time position for which she was well qualified and had all of the necessary certifications.

90.    Initially, Ellece Brown, the Director of Human Resources told Ms. Ficalore that Defendant Pennington and Linda Morton, Clerk of Court directed Brown that Ms. Ficalore would not be able to apply for the position of Deputy

Court Clerk because her husband, a police officer, is also a city employee. However, many other Peachtree City employees are married to or dating other City employees, and there is no prohibition of this in the City employee handbook.  Ms. Ficalore was also married to her husband before she applied for these positions and neither she nor he had ever been told that their relationship was an impediment to their ongoing employment with Peachtree City.

91.    Ms. Ficalore subsequently learned that Morton expressly stated that Ms. Ficalore would not be hired into the open position because of her "current situation" with Peachtree City and especially the Police Department.

92.    More specifically, Morton stated that there was too much bad blood between Ms. Ficalore and the Police Department because of Ms. Ficalore's EEOC Charges and that employees in the Police Department would not want to deal with Ms. Ficalore on a daily basis as would be required if she was the Deputy Court Clerk.

93.    Ms. Ficalore was finally granted a "courtesy interview" for the position.  The City Solicitor recommended Ms. Ficalore for the position, but to no avail.  The position was ultimately filled by an outside applicant notwithstanding the City's written policy to promote from within.

94.    Because she was denied the Deputy Court Clerk position, Ms. Ficalore was ultimately given the options of either being demoted to part-time work in the same position or resigning and receiving six weeks of severance.  At this time, Ms. Ficalore was handed a release of all claims, including claims set forth in this lawsuit.

95.    In the part time position, Ms. Ficalore was to not only lose her salary, but also she would no longer continue to accrue her pension.   Ms. Ficalore accepted the part time position rather than resigning.

96.    As a result of the demotion, Ms. Ficalore lost her sick leave, medical and dental insurance, life insurance, short term and long term disability, employer contribution to her 401K/457 plan, vacation, holiday pay, overtime pay and rights under the Family Medical Leave Act ("FMLA").  The loss of compensation and benefits was financially and emotionally devastating.

97.    Defendants did this with full knowledge that Ms. Ficalore suffers from a disability and needed to be able to use these benefits.

98.    Also around this time, Defendant Morton instructed Kimberly Jones, Solicitor's Assistant/Court Clerk/Terminal Agency Coordinator at the City of Peachtree City Municipal Court, to remove Ms. Ficalore from the Georgia Criminal Information Center Certification.  Ms. Ficalore obtained this certification

when she began employment with Peachtree City and it is instrumental and necessary for her to have it in order to complete the regular tasks and duties of her job.

99.     Ms. Ficalore filed another EEOC Charge on May 18, 2012, detailing this continuing discrimination and retaliation she has suffered at the hands of Defendants because of her gender and disability.

100.   However, Defendants still continue to retaliate and discriminate against Ms. Ficalore, and are attempting to do everything in their power to make her work life unbearable and induce her to quit her job at Peachtree City as a result of her protected activity.

101.   For instance, Ms. Ficalore was given notice on May 31, 2012, that she was put on a probationary evaluation without prior notice (again, in violation of Defendants' policy), which evaluated her performance from January 30, 2012 through April 30, 2012.

102.   Indeed, after filing her May Charge of Discrimination, Ms. Ficalore has continued to be denied comp time, training, overtime, has been disciplined unfairly, has been passed over for more jobs to which she has applied, and has been threatened with termination.

103.   Ms. Ficalore is also aware that her medical information has been kept on her supervisor's home computer, in violation of the Health Insurance Portability and Accountability Act ("HIPAA") and her supervisor referenced her disability in a job related evaluation.

104.   On August 6, 2012, Ms. Ficalore filed another EEOC Charge, detailing the continuing discrimination and retaliation at the hands of Defendants, including Defendant Morton.

105.   Eleven days later, on August 17, 2012, Defendants denied Ms. Ficalore's FMLA leave request for four hours of leave to attend to her medical issues.

106.   At that time, Ellece Brown, the HR Director, informed Ms. Ficalore that since she no longer works 1,250 hours in a year, she would not be eligible to receive FMLA leave any more.

107.   Ms. Ficalore has also been told that if she uses her vacation time for a long scheduled vacation in the fall of 2012, she will be written up.  During the fall of 2012, Ms. Ficalore needed to use her vacation time in lieu of sick time in order to attend to her disability and medical appointments, of which Defendants are aware.

108.   On October 15, 2012, Ellece Brown, by Interoffice Memorandum, offered Ms. Ficalore the position of Deputy Court Clerk, and offered Ms. Ficalore backpay and reinstatement of her benefits and pension.

109.   However, Ms. Ficalore was to be supervised by Linda Morton, the Clerk of Court who originally declined to hire Ms. Ficalore into the Deputy Court Clerk position earlier in 2012 because of Ms. Ficalore's ongoing protected activity. Indeed, Morton was disciplined and suspended in her position because of her behavior toward Ms. Ficalore, and Ms. Ficalore is fearful of additional retaliation by Defendant Morton if Ms. Ficalore accepts this position now.

110.   Confirming this fear, in February 2013, Defendant Morton stated to other employees at Peachtree City that Ms. Ficalore "is crazy if she comes back [to work] because they are going to get rid of her one way or another."

111.   Defendants continue to pressure Ms. Ficalore to leave her job by taking away her sick time, FMLA rights, and demoting her, all the while threatening discipline if she goes to doctor's appointments or on vacation.

112.   Defendants have used these tactics to attempt to force Ms. Ficalore to give up and resign, including involuntarily moving her into the part time position and giving her no other option regarding her employment status at Peachtree City

while knowing that Ms. Ficalore suffers from a disability and needs to be able to use her short and long term disability and comp time.

113.   The conduct of Defendants as stated above constitutes a continuing violation of Ms. Ficalore's rights under Title VII, the Equal Protection Clause, the ADAAA, and the FMLA.

114.   Ms. Ficalore continues to voice her concern about the ongoing different treatment she suffers because of her disability and her gender, and the retaliation she continues to suffer, but continues to be harassed and discriminated against by Defendants.

115.   Additionally, Defendant Clark has apparently continued to intimidate employees at Peachtree City, in the hopes that they will not serve as witnesses for Ms. Ficalore.

**Governmental and Decision Maker Liability**

116.   Defendant Clark is and was, at all times material to this Complaint, the highest City official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the Peachtree City Police Department, including Ms. Ficalore.

117.   Defendant Clark's above-pled employment actions were not subject to, and did not require, higher review or approval.  His above-pled employment actions were also not subject to appeal or reversal by any other official or entity.

118.   Defendant Clark is and was the Defendants' final decision maker with respect to the unlawful employment actions giving rise to this Complaint with respect to the Police Department.

119.   Defendant Clark is and was the City's final policy maker with respect to the unlawful employment actions giving rise to this Complaint with respect to the Police Department.

120.   Defendant Clark undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

121.   Defendant Pennington is and was, at all times material to this Complaint, the highest City official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the Peachtree City, including Ms. Ficalore.

122.   Defendant Pennington's above-pled employment actions were not subject to, and did not require, higher review or approval.  His above-pled employment actions were also not subject to appeal or reversal by any other official or entity.

123.   Defendant Pennington is and was the Defendants' final decision maker with respect to the unlawful employment actions giving rise to this Complaint with respect to the city of Peachtree City.

124.   Defendant Pennington is and was the City's final policy maker with respect to the unlawful employment actions giving rise to this Complaint with respect to the city of Peachtree City.

125.   Defendant Pennington undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

126.   Defendant Morton is and was, at all times material to this Complaint, the highest City of Peachtree City Municipal Court official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the Court, including Ms. Ficalore.

127.   Defendant Morton's above-pled employment actions were not subject to, and did not require, higher review or approval.  Her above-pled employment actions were also not subject to appeal or reversal by any other official or entity.

128.   Defendant Morton is and was the Defendants' final decision maker with respect to the unlawful employment actions giving rise to this Complaint with respect to the City of Peachtree City Municipal Court.

129.   Defendant Morton is and was the City's final policy maker with respect to the unlawful employment actions giving rise to this Complaint with respect to the City of Peachtree City Municipal Court.

130.   Defendant Morton undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of state and local law.

131.   At all times material to this Complaint, it was clearly established law that subjecting subordinates to gender based discrimination and retaliation violates the Equal Protection Clause.

132.   At all times material to this Complaint, it was clearly established law that subjecting subordinates to gender based discrimination violates Title VII of the Civil Rights Act of 1964, as amended.

133.   At all times material to this Complaint, it was clearly established law that subjecting subordinates to discrimination based on disability violates the Americans with Disabilities Act, as amended.

134.   At all times material to this Complaint, it was clearly established law that interfering with an employee's ability to take leave under Family and Medical Leave Act violates the Family and Medical Leave Act.

135.   At all times material to this Complaint, it was clearly established law that subjecting subordinates to retaliation based on engaging in protected activity

violates Title VII, the Americans with Disabilities Act, the Equal Protection Clause, and the Family and Medical Leave Act.

**City Councilmembers' Liability**

136.   Mayor Don Haddix, Council Member Eric Imker, Council Member George Dienhart, Council Member Kim Learnard, and Council Member Vanessa Fleisch, comprise the Peachtree City Council.

137.   Haddix, Imker, Dienhart, Learnard, and Fleisch voted to eliminate Ms. Ficalore's full time position on May 3, 2012.

138.   Haddix, Imker, Dienhart, Learnard, and Fleisch, at all relevant times herein, had notice and knowledge of the retaliation and discrimination suffered by Ms. Ficalore.

139.   Haddix, Imker, Dienhart, Learnard, and Fleisch, at all relevant times herein, had knowledge of Clark and Pennington's violations of Ms. Ficalore's rights under Title VII and the ADA.

140.   Despite having knowledge of the discrimination and retaliation against Ms. Ficalore, Haddix, Imker, Dienhart, Learnard, and Fleisch took no action to stop the illegal conduct, and in fact discriminated and retaliated against Ms. Ficalore by voting to eliminate her full time position in May 2012.

**Punitive Damages Allegations**

141.   Clark, Pennington, and Morton undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Plaintiff and her federally protected rights.

142.   Additionally and in the alternative, Clark, Pennington, and Morton undertook all of the above-pled conduct with reckless disregard for Ms. Ficalore and her federally protected rights.

## COUNT I
## Gender Discrimination in Violation of Title VII (against Peachtree City)

143.   Ms. Ficalore incorporates each of the above factual allegations as if fully restated here.

144.   Defendant Peachtree City is Ms. Ficalore's employer within the meaning of 42 U.S.C. § 2000e(b) for purposes of applying Title VII and the interpretive case law to this action.

145.   Defendant Peachtree City knowingly and intentionally reassigned Ms. Ficalore's position, denied her benefits and other terms of employment due to her, and failed to hire into positions for which she was qualified, while hiring less qualified individuals, thereby reducing her compensation, threatening termination of her employment, and otherwise discriminated against Ms. Ficalore because of her gender, female.

146.   Defendant   Peachtree   City's   conduct   constitutes   unlawful discrimination on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

147.   The actions of Defendant Peachtree City constitute a continuing violation of Title VII.

148.   As a result of Defendant Peachtree City's discriminatory conduct, Ms. Ficalore has suffered lost wages and other benefits of employment, emotional distress, inconvenience, humiliation, damage to her career, and other indignities.

## COUNT II
## Retaliation in Violation of Title VII (against Peachtree City)

149.   Ms. Ficalore incorporates each of the above factual allegations as if fully restated here.

150.   Defendant Peachtree City is Ms. Ficalore's employer within the meaning of 42 U.S.C. § 2000e(b) for purposes of applying Title VII and the interpretive case law to this action.

151.   Defendant Peachtree City's actions of knowingly and intentionally reassigning Ms. Ficalore's position, denying her benefits and other terms of employment due to her, and failing to hire her into positions for which she was qualified, while hiring less qualified individuals, thereby reducing her compensation, threatening termination of her employment, and otherwise

discriminating against Ms. Ficalore because of her sex, constitute unlawful intentional retaliation in violation of Title VII.

152.   Defendant Peachtree City willfully and wantonly disregarded Ms. Ficalore's rights, and Defendants' retaliation against Ms. Ficalore was undertaken in bad faith.

153.   Defendant Peachtree City's conduct constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

154.   The retaliatory actions of Defendant Peachtree City constitute a continuing violation of Title VII.

155.   As a result of Defendants' retaliatory conduct, Ms. Ficalore has suffered lost wages and other benefits of employment, emotional distress, inconvenience, humiliation, damage to her career, and other indignities.

**COUNT III**
**Gender Discrimination In Violation of**
**The Equal Protection Clause**
**(Actionable Under 42 U.S.C. § 1983)**

156.   Ms. Ficalore incorporates each of the above factual allegations as if fully restated here.

157.   The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws based upon gender, female.

158.   The Defendants violated Ms. Ficalore's rights to equal protection by, among other things, knowingly and intentionally reassigning Ms. Ficalore's position, denying her benefits and other terms of employment due to her, and failing to hire into positions for which she was qualified, while hiring less qualified individuals, moving her into a part time position, thereby reducing her compensation, threatening termination of her employment, and otherwise discriminating against Ms. Ficalore because of her gender.

159.   The Defendants' conduct constitutes unlawful sexual discrimination, based upon gender, in violation of the Equal Protection Clause.

160.   The Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of State and local law.

161.   Defendant Clark's unlawful conduct violated clearly established law.

162.   Defendant Pennington's unlawful conduct violated clearly established law.

163.   Defendants Haddix's, Imker's, Dienhart's, Learnard's, Fleish's, and Morton's unlawful conduct violated clearly established law.

31

164.   As a direct and proximate result of the Defendants' actions, Ms. Ficalore has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

165.   Defendant Clark undertook his unlawful conduct intentionally and maliciously with respect to Ms. Ficalore and her federally protected rights, entitling her to recover punitive damages against him.

166.   Defendant Pennington undertook his unlawful conduct intentionally and maliciously with respect to Ms. Ficalore and her federally protected rights, entitling her to recover punitive damages against him.

167.   Defendants Haddix, Imker, Dienhart, Learnard, Fleish, and Morton undertook their unlawful conduct intentionally and maliciously with respect to Ms. Ficalore and her federally protected rights, entitling her to recover punitive damages against them.

168.   The actions of Defendants Clark, Pennington, Haddix, Imker, Dienhart, Learnard, Fleish, and Morton constitute a continuing violation of the Equal Protection Clause.

## COUNT IV
### Discrimination in Violation of ADAAA (against Peachtree City)

169.   Ms. Ficalore incorporates by reference the preceding Paragraphs as if fully restated herein.

170.   At all times relevant hereto, Defendant Peachtree City has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

171.   At all times relevant, Ms. Ficalore was an individual with a disability and had a record of disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(A).

172.   At all times relevant, Ms. Ficalore has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job with or without an accommodation.

173.   Defendant Peachtree City's above-pled actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

174.   As a direct and proximate result of Defendant Peachtree City's intentional discrimination, Ms. Ficalore has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, pension, sick and comp time, and vacation time, all in an amount to be established at trial.

175.   Defendant Peachtree City's actions have caused, continue to cause, and will cause Ms. Ficalore to suffer emotional distress, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

176.   The actions of Defendant Peachtree City constitute a continuing violation of the ADAAA.

177.   Ms. Ficalore is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT V
## Retaliation in Violation of ADAAA (against Peachtree City)

178.   Ms. Ficalore incorporates by reference the preceding Paragraphs as if fully restated herein.

179.   At all times relevant hereto, Defendant Peachtree City has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

180.   At all times relevant, Ms. Ficalore was an individual with a disability and had a record of disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(A).

181.   At all times relevant, Ms. Ficalore has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job with or without an accommodation.

182.   In giving Ms. Ficalore negative performance reviews resulting in a negative impact on her compensation, in interfering with Ms. Ficalore's ability to obtain an open position with Defendant, and in demoting Ms. Ficalore, Defendants retaliated against Ms. Ficalore for engaging in protected activity under the ADAAA.

183.   Defendant's above-pled actions in retaliating against Ms. Ficalore for exercising her rights under the ADAAA were committed with reckless disregard for Ms. Ficalore's right to be free from retaliatory treatment because of the exercise of her rights under the ADAAA.

184.   As a direct and proximate result of Defendant Peachtree City's intentional retaliation, Ms. Ficalore has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, pension, sick and comp time, and vacation time, all in an amount to be established at trial.

185.   Defendant Peachtree City's actions have also caused, continue to cause, and will cause Ms. Ficalore to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

186.   The actions of Defendant Peachtree City in retaliating against Ms. Ficalore constitute a continuing violation of the ADAAA.

187.   Ms. Ficalore is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT VI
## Interference with FMLA Leave

188.   Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

189.   Ms. Ficalore is and has been an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11), 29 C.F.R. 825.114.

190.   By reducing Ms. Ficalore's hours of employment, and refusing to employ her in a full time position, Defendant Peachtree City prevented Ms. Ficalore from exercising the rights provided to her under the FMLA.

191.   Peachtree City's actions in interfering with Ms. Ficalore's rights under the FMLA were committed with reckless disregard for her right to take up to 12 work weeks of leave per year for a serious health condition, her right to job restoration, and violated the FMLA, 29 U.S.C. § 2615(a)(1).

192.   The effect of Peachtree City's actions has been to deprive Ms. Ficalore of a job, as well as income in the form of wages, health insurance,

prospective retirement benefits, social security, and other benefits due her because of her right to leave under the FMLA.

193.   As a result, Ms. Ficalore is entitled to both equitable and monetary relief for Peachtree City's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

194.   Ms. Ficalore is also entitled to liquidated damages for Peachtree City's violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii) because Peachtree City's actions regarding her employment were willful violations of the FMLA.

**COUNT VII**
**Retaliation for Exercise of FMLA Rights**

195.   Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

196.   Ms. Ficalore was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11), 29 C.F.R. § 825.114.

197.   By reducing Ms. Ficalore's hours and denying her full time employment, Defendant Peachtree City retaliated against Ms. Ficalore for

exercising her right to take medical leave for a serious health condition as provided by the FMLA.

198.   Defendant Peachtree City's actions in retaliating against Ms. Ficalore for exercising her rights under the FMLA were committed with reckless disregard for her right to be free from discriminatory treatment for exercising her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(1)(2).

199.   The effect of Defendant Peachtree City's actions has been to deprive Ms. Ficalore of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her because of her exercise of her rights under the FMLA.

200.   As a result, Ms. Ficalore is entitled to both equitable and monetary relief for Defendant Peachtree City's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

201.   Ms. Ficalore is also entitled to liquidated damages for Peachtree City's violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii) because Defendant Peachtree City's actions regarding her employment were willful violations of the FMLA.

## COUNT VIII
## Obstruction of Justice and Interference With Civil Rights (against Clark only)
## 42 U.S.C. § 1985(2)(3)

202.   Ms. Ficalore incorporates by reference the preceding Paragraphs as if fully restated herein.

203.   Police Chief Clark has intimidated witnesses, telling the previous second in Command Major Dupree that during the EEOC investigation, if he did not "get [Defendant Clark's] back," things would be "bad."

204.   During the EEOC investigation, Defendant Clark intimidated another witness, Captain Stan Pye, telling him that it is "easy to get rid of people."

205.   On information and belief, Defendant Clark has attempted to obstruct other witnesses from giving truthful information to the EEOC or has threatened them.

206.   In his efforts to intimidate and influence witnesses, Defendant Clark conspired for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice with intent to deny to Ms. Ficalore the equal protection of the laws and to deprive her of valuable property rights, including but not limited to the right to her job and her pension.

207.   The actions of Defendant Clark in obstructing justice constitute a continuing violation of 42 U.S.C. § 1985(2)(3).

208.   As a result of Defendant Clark's actions, Ms. Ficalore is entitled to both equitable and monetary relief for Defendant Clark's violation of 42 U.S.C. § 1985 including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation, and punitive damages and damages for emotional distress caused by the deprivation of Ms. Ficalore's civil rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

a.   a declaratory judgment that Defendants engaged in unlawful employment practices in violation of Title VII, the Equal Protection Clause, the ADAAA, the FMLA, and/or Section 1985;

b.   a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices in violation of federal law;

c.   full back pay, taking into account all raises to which Ms. Ficalore would have been entitled but for the unlawful discrimination and retaliation, all fringe and pension benefits of employment Ms. Ficalore would have been entitled to but for the unlawful discrimination and retaliation, with prejudgment interest thereon;

d.      economic damages sufficient to compensate Ms. Ficalore for the benefits (including, but not limited to pension, bonuses, raises, vacation time, paid time off, and the like) that she lost as a result of Defendants' discriminatory and retaliatory actions;

e.      instatement to one of the positions to which Ms. Ficalore applied but was denied due to discrimination and retaliation, with full salary and benefits including vacation and sick time, comp time, vacation time, and pension benefits, to which Ms. Ficalore would have been entitled, or, in lieu of instatement, front pay to compensate Ms. Ficalore for lost future wages benefits, comp time, vacation time, and pension or in the alternative front pay;

f.      compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Ms. Ficalore's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

g.      punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish  Defendants Clark, Pennington, Haddix, Imker, Dienhart, Learnard, Fleisch, and Morton

for their conduct toward Ms. Ficalore and deter them from similar conduct in the future;

h.     reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

i.     all other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted, this 1st day of April, 2013.

BUCKLEY & KLEIN, LLP

By:    /s/ Edward D. Buckley
       Georgia Bar No. 092750
       edbuckley@buckleyklein.com
       Jaime L. Duguay
       Georgia Bar No. 829447
       jlduguay@buckleyklein.com

Promenade II, Suite 900
1230 Peachtree Street NE
Atlanta, GA  30309
Telephone:  404-781-1100
Facsimile:  404-781-1101

Attorneys for Plaintiff